Benton County Savings Bank, Appellant, v. First National Bank of Estherville et al., Appellees (two cases).

FRAUDULENT CONVEYANCES: Grounds of Invalidity—Intent— —Knowledge of Debtors' Involved Conditions—Evidence. Evidence of quite involved transactions, attending the giving of deeds and mortgages, reviewed, and held to present the case of a bona fide creditor seeking in good faith to protect his interest, without knowledge of the debtors' financial obligations to other creditors.

*Appeal from Emmet District Court.*—N. J. Lee, Judge.

SATURDAY, APRIL 7, 1917.

The first of the above entitled causes is an action in equity upon promissory notes, aided by attachment levy on

mortgaged chattels, in which it is alleged substantially that plaintiff has a promissory note against E. O. Bergeson and his mother, Anna S. Bergeson, not yet due, but that nothing but time is wanting to fix absolute indebtedness; that plaintiff had brought suit against the parties in the Benton district court, and that an attachment had issued against the personal property of E. O. Bergeson; that defendant bank claims an existing chattel mortgage upon all the property of said E. O. Bergeson, securing an alleged indebtedness of $10,000; that plaintiff has made demand upon said bank for a statement, under Code Section 3987; that plaintiff has filed with the clerk of the Emmet district court its bond, under Section 3988 of the Code. Plaintiff charges that said mortgage is a sham, given and accepted with a design of hindering the creditors of said E. O. Bergeson; that said E. O. Bergeson has advertised a sale of said personal property at auction; and the appointment of a receiver is asked, that the interests of all parties may be promoted. Plaintiff prays judgment determining the validity of said claimed chattel mortgage, and, if found valid, the amount of actual indebtedness secured thereby and the value of the property, and for general equitable relief. J. P. Kirby intervened in the first action, claiming a landlord's lien on the property attached, superior to any claim of plaintiff's. It was stipulated that the attached property should be sold at the advertised public sale, and the proceeds, amounting to $2,532.50, await the result of the litigation.

The second action is in equity, and alleges substantially that, in January, 1912, plaintiff procured two judgments against defendant Anna S. Bergeson in the total sum of $2,996.75; that certain conveyances of lands by the defendants to J. P. Kirby were fraudulent; that E. O. Bergeson and J. P. Kirby entered into a conspiracy, by which E. O. Bergeson procured his mother, Anna S. Bergeson, to make a colorable transfer of her title in and to her lands to said

Kirby, and of her personal property; that said deed to the land and bill of sale for the personal property were without sufficient consideration, and were made to hinder and delay the creditors of Anna S. Bergeson in the collection of their claims. Plaintiff asks that the deed and bill of sale be canceled, and asks that the lands be decreed subject to the lien of plaintiff's judgments, prior and superior to the claim of Kirby, and for general equitable relief. Later, the defendant bank and E. O. Bergeson were made parties defendant. By an amendment to petition, it was alleged substantially that plaintiff had theretofore garnished Kirby and the defendant bank as supposed debtors of Anna S. Bergeson, and that said Kirby, individually and as cashier, disclaimed having possession of any property belonging to said Anna; that the lands described were encumbered by a first mortgage to an insurance company in the sum of $10,000, and by a second mortgage to Kirby for $4,500; that all defendants participated in the plan to hinder plaintiff in the collection of its claims against Anna S. Bergeson, and procured to be executed and recorded two pretended mortgages from the said Anna S. Bergeson to the said J. P. Kirby for $6,000, covering a part of the land. The amendment further asks that the mortgages and deeds be decreed subject to plaintiff's judgments, and, if it be found that either of the mortgages or the deed was voluntary only in part, that an accounting be had for the surplus. By another amendment, it is claimed that defendants have received, through the instruments before referred to, funds which should be applied on plaintiff's claims against Anna S. Bergeson, and judgment is asked against Kirby for $5,173.03.

By proper pleadings, the defendants deny plaintiff's claim, and set up their defenses. By agreement, the cases were consolidated and tried together. Upon a trial, the dis-

trict court found for the defendants, and dismissed both actions. Plaintiff appeals.—*Affirmed.*

*Redmond & Stewart* and *William A. Ladd,* for appellant.

*C. W. Crim,* for appellees.

FRAUDULENT CONVEYANCES: grounds of invalidity: intent: knowledge of debtors' involved conditions: evidence.

PRESTON, J.—The substance of plaintiff's claims is: First, that the chattel mortgage to the defendant bank was a sham and made to hinder and delay creditors; and, second, that the conveyances of lands and chattels were fraudulent, the intent being to hinder and delay creditors, and that the transfers were voluntary, leaving the grantors insolvent and largely indebted. The questions presented are very largely fact questions, and, where there is a large record, as here, it is not practicable, and it is not our custom, to attempt to set out the evidence in detail in the opinion, and try to harmonize the testimony of the witnesses. In this case, many of the facts are not disputed. Appellees have concisely and clearly set out the main facts, and, as to these, appellant says in reply that they find it necessary to challenge but few of counsel's statements of the facts. They do challenge five of them, which will be referred to after we state the important facts as set out by appellees.

It appears that plaintiff is a banking institution, located for years at Norway, in Benton County, Iowa; the defendant bank and its cashier, Kirby, are located in Estherville, Emmet County; the defendants Bergesons formerly lived in Benton County, and were patrons of the plaintiff bank and on intimate terms with its officers, who loaned the sons money before and after their removal to Emmet County. These loans originated about 12 years before these actions were brought; they were not paid, but renewed from year to year and the interest paid, the mother signing with

her sons. The family was prosperous during the father's life, and they were the owners of large tracts. of land in Emmet and Benton Counties. On their removal to Emmet County, the sons undertook farming on a large scale, and were heavy borrowers from defendant bank, increasing their loans, giving mortgages and mortgage deeds on their land to secure the same, and finally mortgaging their chattels, all of which were of public record in Emmet County about December, 1910; and later, they disposed of all their land to defendant's cashier, asking him to pay debts owed to defendant bank, which transaction was settled in full before any knowledge of plaintiff's claim. During the year 1911, plaintiff bank, through its cashier, Pickart, visited the Bergesons two or three times, and negotiated with them for payment of plaintiff's claims, or security, but without success. Later, and about December 1, 1911, plaintiff's cashier, with his attorney, visited the Bergesons, and discovered that their property was disposed of to the defendant bank's cashier, Kirby, and again tried to get security on their claims. The fact that plaintiff held notes against the Bergesons was never by them or anyone else disclosed to defendant bank or its cashier until after they had taken over the Bergeson property and made full payment and settlement, though plaintiff was aware that the Bergesons were dealing with defendant bank. About January 15, 1912, plaintiff commenced action against the Bergesons, and garnished defendant bank and its cashier, and attached personal property of E. O. Bergeson's. The proceeds of the lands of Anna S. and E. O. Bergeson were by them applied in payment of their obligations to the defendant bank, and, when so applied, left them in debt to defendant bank $8,300. When the transfer of the Bergeson lands was made, Anna S. Bergeson, a woman 63 or 64 years old, gave her son, E. O. Bergeson, her order on defendant bank, in words as follows:

"J. P. Kirby.  Dear Sir:  You will please pay to Mr. E. O. Bergeson any funds that may be due me from my loan account or any funds on account of said sale of my farm and personal property, same to be applied on my notes to him."

It is claimed by appellee that this order was accepted by defendant bank and the money placed to the credit of E. O. Bergeson, who used the money in paying on his mother's obligations to the bank, and that the matter of his giving credit to his mother on her notes to him, being a personal matter, is unknown to the defendant bank and its cashier.

We should say here that the conveyance of the land by E. O. Bergeson of about 800 acres was made prior to the conveyance by his mother.  The first conveyance is the one, as we understand the record, that defendants claim was all settled before the defendant bank and Kirby had any knowledge of plaintiff's claims against the Bergesons. The mother's land consisted of 319 acres, which was sold at $70 an acre, or a total of $22,330, and her personal property conveyed was $2,000, a total of $24,330; and the conveyance of the land was subject to the first and second mortgages above referred to, amounting to $14,500, and interest. Out of the balance, interest, other notes, judgments, taxes, etc., were paid, which defendants claim took up all the balance, and that the account was balanced, while plaintiff claims that four items so paid were credited wrongfully, and that these four items, amounting to $5,172.10, should be accounted for.  While appellant argues other questions as to the validity of the chattel mortgage, and as to whether it had been paid or settled in the first land deal or by deposits in defendant bank by some of the parties and by notes and renewals thereof, also the question as to whether the first conveyance was valid, we apprehend that their real claim is that what they most rely upon is that

the four items just referred to, amounting to $5,172.10, were wrongful, and that the defendants, or the defendant Kirby, should account for that alleged surplus, on the theory, we take it, that the conveyances were at least voluntary and without consideration to that extent.

Continuing appellee's statement as to the facts, it is stated that, in the spring of 1912, E. O. Bergeson removed to Canada, the fact of his intended removal being known to plaintiff in June, 1911; that E. O. Bergeson was his mother's adviser and manager, and that this was known to the plaintiff. Kirby testified that the price at which the Mrs. Bergeson land was taken over, $70 per acre, was a fair price; E. O. Bergeson, plaintiff's witness, testified that the fair price was $75 to $80 an acre; and no other testimony was taken, except that of Mr. Pickart, who testified that his knowledge of values was only from general inquiry. Appellee says that plaintiff, as he understands it, concedes that the attachment on chattels and garnishment should fail, but contends that the money received from Anna S. Bergeson's lands, after paying her debts, should be applied on plaintiff's judgment, and that therein lies the present dispute.

Counsel for appellant challenge the appellee's foregoing statements as to the facts, in the following particulars: They deny that the transaction between defendant bank, Kirby and the Bergesons, was fully settled before defendants had knowledge of the plaintiff's claim; and the second is substantially the same: they deny that defendants had no knowledge of the plaintiff's claim before they took over the Bergeson property or made payment in settlement therefor; they deny that defendants Anna S. Bergeson and E. O. Bergeson are still indebted to the defendant bank as claimed; they deny that Mrs. Bergeson's order was accepted by the defendant bank and the proceeds of her property disposed of as defendants state; and, last, that the plain-

tiff concedes that the attachment and garnishment on the chattel property should fail.

1. We shall spend but little time in reviewing the evidence as to appellant's claim that the $10,000 chattel mortgage given by E. O. Bergeson to the defendant bank, or to Kirby, its cashier, for the bank, is a sham. Appellant contends that the chattel mortgage debt was paid in the first land transaction between E. O. Bergeson and the bank, or Kirby, in the sale of 800 acres of land, or paid by some of the numerous notes and renewals thereof, given by E. O. Bergeson to the defendant bank, or by other transactions between the parties. But it is testified that the 800 acres of land was figured at $62.50 per acre, or $50,000, and the sale was subject to encumbrances thereon of $26,500; and the testimony for defendants is that, before that conveyance, the amount of claims held by Kirby or the bank against E. O. Bergeson was about $30,000, evidenced by promissory notes of E. O. Bergeson. The books of defendant bank, or an agreed copy, were introduced in evidence, showing the state of the account for several years between the bank and E. O. Bergeson, and a list of a number of notes and renewals, showing also the deposits and overdrafts of E. O. Bergeson in the bank. There was a large number of such transactions, and there were deeds on lands, which were in fact mortgages, given, as defendant bank claims, as security for claims or notes other than the $10,000 mortgage. The inference plaintiff seeks to draw from these numerous transactions is that the mortgage was paid and satisfied, and that it was still held as a pretended claim against Bergeson. Another circumstance relied upon by appellant in this connection is that, in the spring of 1912, E. O. Bergeson had invested about $1,400 in Canada land, and that defendant bank, or Kirby, permitted him to take 8 horses and some machinery to Canada which was covered by the mortgage in question. There are some other circum-

stances relied upon. This, without going further into detail, is the substance of appellant's claim. But the officers of defendant bank testify that the chattel mortgage in question covered loans of money made by the bank to Bergeson after the conveyance and settlement for the 800 acres of land. The defendant E. O. Bergeson, called as a witness for plaintiff, testified that, after the conveyance of his land, there remained an indebtedness due from him to the defendant bank, after such conveyance, the $10,000 and the chattel mortgage; that moneys borrowed by him from the bank were secured by chattel mortgage and on his individual notes. Without more, it is enough to say that, taking the circumstances all together, we think the trial court was justified in finding that the $10,000 debt and the chattel mortgage were valid claims, and, therefore, the attachment and garnishment on the chattel property should fail.

2. Taking up now the question as to the conveyance of the lands, perhaps it would be well to note the evidence briefly upon the few points wherein plaintiff challenges the appellee's statement, before set out. Mr. Kirby testified that, in carrying out these transactions with the Bergesons and taking the transfers and the conveyances and applying the funds in the manner shown, he knew nothing about the indebtedness of the Bergesons, or any of them, to the plaintiff before he bought the land, and that, in the transfers and conveyances, and in applying the funds and proceeds in the manner he did, there was no intent or purpose on his part to hinder or delay creditors of the Bergesons; that his intent was to get out, and he did not know of the other existing debts. Plaintiff's cashier, Pickart, who was, at about the time of the commencement of these suits, or before, looking after plaintiff's claims against the Bergesons, and who visited the Bergesons in Emmet County in the attempt to collect or secure plaintiff's claims, testi-

fies that he does not remember that he ever communicated with Kirby or defendant bank in regard to the Bergeson indebtedness to plaintiff. He knew that the Bergesons were dealing with defendant bank, because he says interest on the plaintiff's notes was paid by the Bergesons usually by checks on defendant bank.

As to the claim of defendant bank that there is still an indebtedness of $8,300 due, Mr. Kirby testified that E. O. Bergeson is still indebted to the bank in the sum of $8,300, except that there should be a credit of $163, and produced the notes and a chattel mortgage securing them on a part of the property that was attached. As we understand it, this was after the conveyance of the Anna S. Bergeson land. The testimony shows that defendant bank, by its acts, accepted the order given by Mrs. Bergeson, directed to Kirby, and that the money was paid out; so that, notwithstanding plaintiff's challenge to the statements before referred to, we think the evidence sustains appellee's claim as to this. In this connection, there is still another matter we shall refer to at this point, in regard to the testimony of Mr. Pickart, plaintiff's cashier. He testified that E. O. Bergeson told him, in June, 1911, that he, E. O., expected to go to Canada later. This was after the conveyance of the E. O. Bergeson land to Kirby in 1910. It also appears from the record that, prior to the conveyance of Mrs. Bergeson's land to Kirby, the plaintiff bank, or its cashier, had an opportunity to take the land at a price which appellant admits was a fair price, and to deduct all plaintiff's claims against the Bergesons, but plaintiff refused to have anything to do with it, the cashier says, because he had no authority to do so. But at that time, or about that time, he was seeking to enforce the payment of plaintiff's claims against them.

3. We are satisfied from the record that, as to the first land deal,—the sale by E. O. Bergeson to Kirby of the 800 acres about December, 1910,—defendant fully paid and

settled therefor before defendant bank and Kirby had any notice or knowledge of plaintiff's claim.

4. The contention of appellant in regard to the Anna S. Bergeson land is that the situation presents the case of a purchaser of the property of an insolvent, and that the sale was partly voluntary, and that the purchaser should account to it; while it is appellee's contention that it is a case of a creditor seeking to protect his own interests, under which a different rule prevails, as stated in *Wescott v. City of Sioux City,* 141 Iowa 453, one of the cases cited by appellant. Appellant urges that Kirby was not a creditor of Mrs. Bergeson's, either individually or in his capacity as bank cashier, and that, at least as to the amount of the alleged unauthorized payments before referred to, Kirby was a purchaser, and to that extent should account to plaintiff. While it is true that the deed was taken in Kirby's name, as were other notes, mortgages, and perhaps deeds given as security, still he was cashier for the defendant bank during all this time, and, under the record, was acting for the bank. If there were any dispute between Kirby and the bank, he might be required to account to the bank, because he could not use his position in the bank for his own profit and to the prejudice of the bank.

The conveyance by Mrs. Anna S. Bergeson of her land and personal property to Kirby was in the latter part of the year 1911. She had no property left thereafter. As said, there were 319 acres, at $70, amounting to $22,330, and the personal property, $2,000, subject to mortgages, interest and other claims. The purchase price is all consumed or paid by defendant bank, or Kirby. But, as stated, appellant contends that there are four items, amounting to $5,172.10, so paid, which were improperly paid and wrongful credits therefor taken. All these payments were made by Kirby or the bank under the written order before set out given by Mrs. Bergeson to Kirby, directing him to pay

E. O. Bergeson funds on account of the sale of her farm and personal property. It is true that the latter part of the order says, to be applied on her notes to E. O. Bergeson. This order was acted upon, and the money placed to the credit of E. O. Bergeson in defendant bank, and the money was used in paying obligations of E. O. Bergeson's mother to the bank. We do not understand appellant to claim any impropriety in this. They claim that there were no notes of Mrs. Bergeson to E. O.; that any payment of notes signed by E. O. and his brother Arthur, upon which Mrs. Bergeson was not liable, would be an unauthorized payment, and that such payment is contrary to the last clause of the order; and the claim is made by appellant that the payment of such notes in the sum before stated was a gift by Mrs. Bergeson to her sons, and that she could not make a valid gift to them, not having sufficient property left to pay her creditors. But the order directed Kirby to pay E. O. Bergeson any funds due her on account of the sale of her farm and personal property, and if this was done by the bank or Kirby in good faith, and without any intent to defraud her creditors, the payment by Kirby to E. O. Bergeson would not be wrongful. Kirby testifies, as before set out, that he did not know of plaintiff's claims against the Bergesons at the time he settled for the lands, and at the time of closing the deal for the Mrs. Bergeson land, he says that he thought he had all the claims or business, but that he did not have.

The matter of E. O. Bergeson's giving credit to his mother on her notes to him would be a personal matter, and appellee contends that, as to this, the facts were unknown to the defendant bank and its cashier. There seems to be but little dispute between counsel as to the law, each side citing cases applicable to the state of facts as they claim them to be, one side claiming, as stated, that Kirby was a purchaser of an insolvent and that the sale was partly

voluntary; while the other contends, and cites cases in support of the proposition, that defendant bank and Kirby were creditors protecting the interests of defendant bank. We think the cases cited by defendant bank and Kirby are applicable to the facts as established upon the trial; that is, that the defendants other than the Bergesons were creditors seeking in good faith to enforce their demands. Appellees also contend that, even though there was fraud on the part of the Bergesons, it was not known or participated in by defendant bank or Kirby, and that they had no knowledge of such facts as would put a reasonable man on inquiry. Appellees also contend that plaintiff was not diligent in the matter of attempting to collect its claim, and may not complain that defendant bank secured its claims.

The case being so much one of fact, we deem it unnecessary to cite and review the many cases cited by both sides, except to say that plaintiff seems to rely to a considerable extent upon the case of *Long v. Garey Investment Co.*, 135 Iowa 398, 403, and like cases. But in that case, the then owner of title to the property failed to offer evidence of the amount paid or the *bona fides* of the transaction, which is not the case here. Appellees claim that the instant case is in line with *Atkinson v. McNider*, 130 Iowa 281, 285.

The opinion is already too long, and we would not feel justified in pursuing the subject further. It is our conclusion, after an examination of the long record presented, that the judgment of the trial court was right, and it is, therefore,—*Affirmed*.

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.